# STATE OF LOUISIANA

## COURT OF APPEAL, THIRD CIRCUIT

## 16-717

**DELTA FUEL COMPANY, ET AL.**

**VERSUS**

**EDDIE LOYED**

**\*\*\*\*\*\*\*\*\*\***
**APPEAL FROM THE**
**SEVENTH JUDICIAL DISTRICT COURT**
**PARISH OF CONCORDIA, DOCKET NO. 49953**
**HONORABLE KATHY JOHNSON, PRESIDING**
**\*\*\*\*\*\*\*\*\*\***

**SYLVIA R. COOKS**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.

**AFFIRMED.**

Jennifer L. Anderson
C. Parker Kilgore
Jones Walker, LLP
Four United Plaza, Fifth Floor
8555 United Plaza Blvd.
Baton Rouge, LA 70809-7000
(225) 248-2181
**ATTORNEY FOR PLAINTIFF/APPELLEE**
   Delta Fuel Company, et al.

Ravi Sangisetty
Michael Lillis
Sangisetty Law Firm
935 Gravier Street, Suite 835
New Orleans, LA 70112
(504) 662-1016
**ATTORNEY FOR INTERVENOR/APPELLANT**
   Herring Gas Company, Inc.

Robert Landry
Tanner Magee
Landry Magee, LLC
7833 Main Street
Houma, LA  70360
(985) 655-0240
**ATTORNEY FOR DEFENDANT/APPELLANT**
  Eddie Loyed

**COOKS, Judge.**

This appeal arises out of Defendant, Eddie Loyed's, prior employment with Plaintiff, Delta Fuel Company, Inc. and his present employment with Herring Gas Company, Inc. At issue is an "At Will Employment Agreement" (hereafter Agreement) executed between Loyed and Delta Fuel on June 14, 2010.

Loyed worked in various capacities for Delta Fuel beginning with his hiring in April of 2010. Loyed initially drove a truck that supplied propane and other petroleum products to various businesses. After receiving additional training from Delta Fuel, Loyed was named the Southern District Propane Manager for the Natchez, Mississippi branch of Delta Fuel. His responsibilities included day-to-day management of Delta Fuel's propane business in the Southern District, which included various parishes in Louisiana and counties in Mississippi. Loyed prepared pricing information for current and potential clients, identified potential clients, solicited business from potential clients, and maintained client/prospect information. According to Delta Fuel, as a high ranking employee, Loyed had access to significant confidential and proprietary business information related to customers. This confidential and proprietary information included customer lists, customer financial information, marketing materials, pricing arrangements and business plans. Delta Fuel maintained if this information was obtained by a competitor, it would give a significant advantage to any competitor seeking to service Delta Fuel's customers.

According to Delta Fuel, it had an issue with another former employee, and in 2010, asked all current employees to review and enter into non-compete agreements. Loyed was given a copy of the non-compete agreement and could have consulted an attorney if he so chose. He signed the non-compete agreement on June 14, 2010.

Following a drop in oil prices and general slowdown in the oil business in early 2016, Delta Fuel underwent internal restructuring. Some employees in the Natchez office were laid off, but Loyed maintained his employment, salary and benefits, although it was testified that the ability of employees to work overtime hours was largely eliminated. Loyed was asked to resume driving a propane delivery truck to make deliveries to customers, rather than some of his prior managerial duties. Loyed let it be known to his supervisors and co-workers that he was considering other employment. According to Steve Wiggington, a Divisional Manager for Delta Fuel who was Loyed's supervisor, he was asked by Loyed if Delta Fuel would enforce his non-compete agreement if he resigned. Wiggington told Loyed that it would be enforced. Loyed also asked the same question to Victoria Bourke, who was responsible for the implementation of the non-compete agreements, and was told by her Delta Fuel would likely enforce the non-compete agreement.

On March 14, 2016, Loyed resigned from his position with Delta Fuel. He them immediately began employment with Herring Gas. Delta Fuel asserts that Herring Gas is its direct competitor. Two days after his resignation, Loyed showed up at the Delta Fuel offices driving a Herring Gas truck.

Shortly thereafter, Delta Fuel filed the present action against Loyed seeking temporary, preliminary, and permanent injunctive relief to enforce the non-compete covenant. Initially, the trial court issued a temporary restraining order in the matter on the basis of Delta Fuel's motion for same, at which point Herring Gas intervened in the proceedings.

A full hearing on the matter was held on May 31, 2016, after which the trial court issued a preliminary injunction enjoining Loyed's continued employment with Herring Gas finding him in breach of the Agreement. The trial court gave the following reasons in open court in support of its decision:

4

The beginning paragraph of page eight -- I mean paragraph eight, it does appear to be very definite as to what Mr. Loyed is agreeing to refrain from engaging in, but when you go down to paragraph -- the next paragraph, it says, "If employee becomes employed by a competing business regardless of whether or not employee is an owner or equity interest holder of that competing business, employee shall be deemed to be carrying on or engaging in a business similar to that of the company." So I believe that the later sentence in that paragraph does cover the business that Delta Fuel is seeking to restrict Mr. Loyed from engaging in and I'm going to deny the request that the preliminary injunction be dismissed.

The trial court signed a final judgment reflecting that ruling on June 14, 2016. Both Loyed and Herring Gas have appealed the preliminary injunction, asserting the trial court erred in finding that Loyed was in violation of the non-compete agreement and in granting the motion for preliminary injunction.

**ANALYSIS**

Questions of contractual interpretation are questions of law, which under Louisiana law are subject to a de novo standard of review. *Mitchell v. Patterson Ins. Co.*, 00-612 (La.App. 3 Cir. 12/6/00), 774 So.2d 366. Thus, in interpreting the Agreement at issue, our review is de novo.

Historically, Louisiana's public policy has disfavored non-competition agreements. *SWAT 24 Shreveport Bossier, Inc. v. Bond*, 00-1695 (La.6/29/01), 808 So.2d 294. This policy is based on the state's "desire to prevent an individual from contractually depriving himself of the ability to support himself and consequently becoming a public burden." *SWAT 24*, 808 So.2d at 298. "Because such covenants are in derogation of the common right, they must be strictly construed against the party seeking their enforcement." *Id*. at 298.

Louisiana Revised Statutes 23:921(C) provides an exception to Louisiana's public policy against non-competition agreements. It provides:

Any person, including a corporation and the individual shareholders of such corporation, who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or

5

parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment.

Further, La.R.S. 23:921(D) provides, in pertinent part, that "a person who becomes employed by a competing business, regardless of whether or not that person is an owner or equity interest holder of that competing business, may be deemed to be carrying on or engaging in a business similar to that of the party having a contractual right to prevent that person from competing."

The language in La.R.S. 23:921(D) makes it permissible for an employer to prohibit an employee from seeking employment from a competitor in the restricted territory. As Delta Fuel notes, the court in *Restored Surfaces, Inc. v. Sanchez*, 11-529 (La.App. 5 Cir. 12/28/11), 82 So.3d 524, 528, explained that "the legislature broadened the scope of non-compete agreements by amending La.R.S. 23:921" to include the provisions of La.R.S. 23:921(D). The court further stated "[t]hus, La.R.S. 23:921, as amended in 2003, now provides that a person who becomes employed by a competing business, regardless of whether he is an owner or equity interest holder of that business, may be deemed to be carrying or engaging in a business similar to that of his former employer who seeks to enforce a non-compete agreement." *Id*. This is what Delta Fuel contends Mr. Loyed agreed to when signing the Agreement.

Section 8 of the Agreement executed by Mr. Loyed and Delta Fuel states as follows:

> Non-Competition. Employee agrees to refrain from carrying on or engaging in a wholesale gasoline, diesel fuel, propane, lubricants, or other bulk fuel and petroleum products supply, storage, or service business similar to that of the Company and from soliciting customers of the Company within the parishes and counties listed in Appendix A of this agreement, so long as the Company carries on a like business therein, for a period of two (2) years after termination of employment. If Employee becomes employed by a competing business, regardless of whether or not Employee is an owner or equity interest holder of that competing business, Employee shall be deemed to be carrying on or engaging in a business similar to that of the Company. The parties

6

acknowledge, agree, and stipulate that the Company currently carries on the business specified above in each of the parishes and counties listed in Appendix A of this Agreement.

This paragraph sets forth a "non-solicitation" agreement in which Loyed agreed to refrain from soliciting any Delta Fuel customer for a period of two years. There was specific testimony from Steve Wiggington that at the same time Loyed changed jobs from Delta Fuel to Herring Gas, Goodrich Petroleum, a bulk fuel customer of Delta Fuel, switched its business from Delta Fuel to Herring Gas. Wiggington testified without contradiction that Herring is a direct competitor of Delta Fuel. He testified as follows:

Q. How do you know Herring?

A. Well they're one of our competitors in the area that we do business in.

Q. So they're essentially a direct competitor of Delta Fuel?

A. Yes.

Q. All right. Do Delta Fuel and Herring offer the same products?

A. Yes.

Q. Talk a little about that.

A. Well, we both deliver propane to, for instance, if there's a grain elevator, we both deliver to grain elevators. That's – we have a bottle filling station and they have a bottle filing station. We go a little further in providing the cages and so forth, which they don't. We both do residential propane to the homes. They do tanks, provide tanks for agricultural – I'm not sure if they provide the fuel for some of their agriculturalist. So, pretty much everything that we do, they do as well.

Q. So, and we're talking both five gallon Blue Rhino –

A. Right.

Q. – type tanks?

A. Right.

Q. But then we're talking large bulk fuel tanks, correct?

A. Correct. Correct.

7

Q. So, for an oilfield operation, has there ever been a situation where herring and Delta Fuel had customers that switched from one to the other?

A. Uh-huh.

Q. Give me an example of that.

A. Well, we had for instance, we were doing Goodrich. We had, I think, about nine or ten tanks down there and right after Mr. Loyed left, the company switched over to Herring.

Q. And how big were these tanks?

A. Those are thousands, thousand gallons.

Q. So these weren't little five gallon residential tanks? These were large industrial operations.

A. Correct.

Q. And, so it was five to ten – five to ten thousand gallon tanks at different well sites?

A. Yeah. You're talking about total – thousand gallon tanks.

Q. And, and at five to ten well sites?

A. Yes. Right.

Q. And, so is Herring a direct competitor of Delta Fuel?

A. Absolutely.

Wiggington was cross-examined by both counsel for Loyed and Herring Gas, and consistently maintained that Herring Gas was a direct competitor of Delta Fuel. Loyed and Herring Gas failed to produce any testimony or evidence to contradict Wiggington's testimony in that regard.[1] They also did not dispute that Goodrich Petroleum switched its business from Delta Fuel to Herring Gas in the immediate

---

[1] Herring Gas stated in brief that the trial court issued its ruling "in part before Defendants had opportunity to present its case." This statement conveniently ignores the actual events that occurred below. As Delta Fuel notes, when it rested its case, the trial court provided Defendants an opportunity to present their case. Rather than calling witnesses (who were present that day in court), Defendants moved to dismiss the preliminary injunction. The trial court denied that request. Despite that denial, Defendants moved to appeal the judgment rather than request to present their witnesses or contrary evidence. Thus, there is no merit in Herring Gas' contention that it was denied an opportunity to present its case.

aftermath of Loyed being hired by Herring Gas. We cannot say the trial court erred in finding this constituted activities which breached Paragraph 8's prohibition against carrying on or engaging in any business similar to that of Delta Fuel in specified parishes for twenty-four months after Loyed's employment with Delta Fuel ended.

The primary argument by both Loyed and Herring Gas focuses on the first sentence of the Agreement, which states "Employee agrees to refrain from carrying on or engaging in a *wholesale* gasoline, diesel fuel, propane, lubricants, or other bulk fuel and petroleum products supply, storage, or service business . . ." (Emphasis added.) Defendants specifically focus on the word "wholesale" as describing all forms of business activities covered in the first sentence. They contend Herring Gas is strictly a retail operation and does not perform wholesale petroleum services. As set forth earlier, Defendants presented no testimony to confirm that Herring Gas was not involved in any wholesale activities. This contention was made only by counsel for Defendants at trial and in brief. Moreover, it was specifically testified by Wiggington that "pretty much everything that we (Delta Fuel) do, they (Herring Gas) do as well."

Delta Fuel also argues Defendants mischaracterize the applicability of the word "wholesale" as limiting any and all forms of business covered in the first sentence. They maintain a "straightforward reading shows that the first sentence of the agreement bars two distinct sets of conduct: (1) 'carrying on or engaging in a wholesale gasoline, diesel fuel, propane, lubricant' business, or (2) 'carrying on or engaging in . . . other bulk fuel and petroleum products supply, storage, or service business similar to that of' Delta Fuel." The clear testimony concerning Goodrich Petroleum indicates that Herring Gas is involved in more than strictly retail sales, and, at a minimum, involved in bulk fuel and petroleum products supply, as the tanks filled at Goodrich were "five to ten thousand gallon tanks." Thus, we agree

9

with Delta Fuel that even if Defendant's interpretation of the first sentence of the Agreement is accepted as correct, Loyed's employment with Herring Gas is still barred by the Agreement.

## CONCLUSION

The testimony established Herring Gas is a competitor of Delta Fuel in the supply of bulk fuel and petroleum products. Paragraph 8 of Loyed's Agreement sets forth that if the employee "becomes employed by a competing business . . . Employee shall be deemed to be carrying on or engaged in a business similar to that of the Company." Therefore, we find the trial court did not err in finding the "At Will Employment Agreement" executed by Loyed and Delta Fuel prohibits Loyed from being employed by Herring Gas in the restricted territories.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed one half to Defendant-Appellant, Eddie Loyed and one-half to Intervenor-appellant, Herring Gas Company.

**AFFIRMED.**